UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT
HARTFORD

| | |
|---|---|
| MARTIN MEYERS AND LLV OF HARTFORD, INC., <br>    Plaintiffs/Defendants-in Counterclaim, <br><br> V. <br><br> GABR, KHALED, F. A/K/A, KHALED AZIZ, AND NILE MANAGEMENT LEASING CORPORATION <br>    Defendants/Plaintiffs-in-Counterclaim. | NO. 3:02CV527RNC <br><br><br> OCTOBER 31, 2003 |

**MEMORANDUM OF LAW IN SUPPORT OF**
**DEFENDANTS' MOTION TO COMPEL PRODUCTION OF DOCUMENTS**

Pursuant to Rule 37(a) of the Federal Rules of Civil Procedure and Rule 37(a) of the Local Rules of Civil Procedure, the defendants, Khaled Gabr, a/k/a Khaled Aziz ("Aziz"), and Nile Management Leasing Corporation (collectively "Defendants"), submit this memorandum of law in support of their Motion to Compel Production of Documents ("Defendants' Motion"), of even date.

The plaintiffs have objected to only nine of the 41 items in the document production request at issue. And yet as of the date hereof, <u>seven (7) months</u> after the plaintiffs' compliance deadline, the plaintiffs have failed to produce any documents. Because of the plaintiffs' continued and willful failure to honor the court's deadline, and because their objections are unfounded, the Defendants' Motion should be granted.

1

I.   **Background**

The plaintiffs, Martin Meyers ("Meyers") and LLV of Hartford, Inc. ("LLV"), commenced this action in the Connecticut Superior Court, Judicial District of Hartford, by an application for prejudgment remedy, writ, complaint and related papers dated February 19, 2002. As described in the complaint, the dispute arises from Aziz and Meyers' joint ownership of certain commercial real property in Hartford ("Premises"); the performance of certain improvements to the Premises; and the use of the proceeds of a certain loan secured by a mortgage against the Premises. More particularly, the plaintiffs allege that Aziz misappropriated loan money that was supposed to be used to pay for improvements to the property.

The matter was timely removed to this court. Attorney Charles I. Miller ("Attorney Miller") of the Hartford law firm O'Connell, Flaherty & Attmore filed an appearance for the plaintiffs.

On September 4, 2002, the defendants filed an Answer, Affirmative Defenses and Counterclaim bearing that date. In their Answer and Affirmative Defenses, the defendants denied any liability to the plaintiffs. In the Counterclaim, the defendants alleged, among other things, that Meyers had misappropriated rents paid by tenants in the Premises.

On September 6, 2002, the defendants served a request for production of documents (the "Document Request") upon the plaintiffs. A copy of the Document Request is attached hereto as Exhibit A.

By agreement of the parties, the plaintiffs' response deadline to the Document Request was suspended for a period of time while the parties discussed settlement. The parties further agreed that, if negotiations proved unsuccessful, counsel for the defendants

2

could restart the compliance "clock" by sending a letter ("Demand Letter") to counsel for the plaintiffs, demanding compliance within thirty (30) days following receipt of the letter. Settlement discussions did break down, and counsel for the defendants tendered a Demand Letter on January 27, 2003, which was received on January 29, 2003. A copy of the Demand Letter is attached hereto as Exhibit B. Thus the plaintiffs' response deadline was extended to February 28, 2003.

On that date, the plaintiffs timely moved to extend their response deadline to March 30, 2003. The court (Chatigny, J.) granted the motion. There have been no further extensions, either by court order by agreement, and so March 30, 2003, remains the operative deadline.

Also on February 28, 2003, the plaintiffs filed an objection to a limited number (9) of the 41 items in the Discovery Request. The court has not ruled on the objections.

On May 15, 2003, Attorney Miller moved to withdraw his appearance on behalf of the plaintiffs. The court granted the motion on June 2, 2003. Also on May 15, 2003, Meyers entered a pro se appearance for himself, and also entered a purported "pro se" appearance for LLV, which is legally ineffective because LLV is a corporation and Meyers is not an attorney.

The defendants have made numerous attempts to contact Meyers and Attorney Miller with respect to compliance with the Discovery Request. *See* Affidavit of Christine DeRosa, Esq. However, the plaintiffs have been unresponsive. As of the date hereof, the plaintiffs have not produced any documents in response to the Discovery Request, including the 32 items to which the plaintiffs did not interpose an objection. In the face of the court's

3

deadline of October 31, 2003, to file motions to compel, the defendants find themselves with little choice but to invoke the authority of the court in this regard.

## II.     Argument

A party who receives a request for the production and inspection of documents has 30 days to serve a written response, absent a contrary order of the court or the parties' written stipulation. Fed.R.Civ.P. 34(b). A party submitting a document request "may move for an order under Rule 37(a) with respect to any objection to or other failure to respond to the request or any part thereof, or any failure to permit inspection as requested." *Id.*

> Rule 37(a), in turn, provides in relevant part as follows:
>
> [I]f a party, in response to a request for inspection submitted under Rule 34, fails to respond that inspection will be permitted as requested or fails to permit inspection as requested, the discovering party may move for an order compelling an answer or a designation, or an order compelling inspection in accordance with the request.

*Id.*

As for the scope of discovery, parties "may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party, including the existence, description, nature, custody, condition, and location of any books, documents, or other tangible things and the identity and location of persons having knowledge of any discoverable matter. ... Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Fed.R.Civ.Proc. 26(b)(1). Parties are entitled to extremely liberal discovery under the Federal Rules of Civil Procedure. Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340, 351 (1978). "[I]nformation is relevant if it 'encompass[es] any matter that bears on, or that reasonably could lead to evidence that bears on, any issue that is or may be in the case.'" Coughlin v. Lee, 946 F.2d 1152, 1159 (5th Cir. 1991) (quoting Oppenheimer Fund, Inc. v. Sanders, 437 U.S. at 351).

4

A party objecting to a discovery request carries the burden of showing why it should be disallowed. Josephs v. Harris Corp., 677 F.2d 985 (3rd Cir. 1982); Stoneybrook Tenants Association, Inc. v. Alpert, 29 F.R.D. 165 (D. Conn. 1961); Schapp v. Executive Industries, Inc., 130 F.R.D. 384 (N.D. Ill. 1990). To satisfy its burden, the resisting party must detail specific reasons why each discovery request is objectionable, "whether it be by a simple affidavit or some other evidence which supports its objection." Schapp, 130 F.R.D at 386. "[T]he more important the information sought in discovery is to the case, the greater the burden the opposing party can legitimately be required to shoulder." Coughlin, 946 F.2d at 1160.

In the present case, far more than 30 days have elapsed since the expiration of the plaintiffs' extended response deadline. Thus, to the extent of the 32 discovery items that are not the subject of objections, the defendants submit that sanctions are in order due to the plaintiffs' continued disregard for the deadline.

As for the items to which the plaintiffs interposed objections, following is a verbatim itemization of the items in question, followed by the defendants' statement of reasons why the discovery should be allowed:

> 24. A detailed accounting for all rents that the Plaintiff has collected and/or received for the project from the inception up to the present. Please included [sic] in this accounting, the name of the person/company making the payment, the date of the payment, the amount of the payment, and where each payment was deposited.

Defendants' statement: In the second count of the counterclaim, the defendants have asserted that Meyers collected rents issuing from the Premises and misappropriated them rather that using them to pay partnership debts, in breach of his fiduciary duty to Aziz. This request is squarely within the scope of the counterclaim.

> 27. Copies of any and all Federal and State Income Tax Returns for the plaintiff, from 1995 up to and including the present.

Defendants' statement: This request is relevant to the defendants' counterclaim for misappropriation of partnership assets. The plaintiffs are legally required to declare all taxable

5

income, whether obtained lawfully or not. The tax returns, by showing the amount and sources of the plaintiffs' income, may provide evidence relevant to the defendants' misappropriation claim.

32. Copies of any and all documents that constitute, relate, or refer to any communications between the Plaintiff and the Defendant concerning the project in Connecticut, and which is contained in the Plaintiffs Complaint.

33. Any and all documents that constitute, relate, or refer to any communications between the Plaintiff and any other person or corporation concerning the project in Connecticut, and which is contained in the Plaintiffs Complaint.

Defendants' statement: These two requests by their very terms are limited to communications <u>within the scope of the plaintiffs' complaint</u>. Given this limitation, any claim by the plaintiffs of overbreadth is unfounded. Furthermore, like any discovery request, these items should be construed as not requiring the production of privileged items or those that constitute attorney work-product; for all such items, the plaintiffs should submit a privilege log, as per Local Rule 37(a)(1).

34. Any and all documents which constitute, relate, or refer to any agreement between the Plaintiff and the Defendant regarding the work to be done, materials to be used, or contractors to be used, in relation to the Connecticut project.

35. Any and all documents which constitute, relate, or refer to any agreement between the Plaintiff and any other person or corporation regarding the work done or materials used on the project in Connecticut, and which is contained in the Plaintiff's Complaint.

Defendants' statement: The plaintiffs' claims stem from the allegation that Aziz misappropriated loan money earmarked for improvements to the Premises. These requests are addressed to agreements entered into by the plaintiff <u>regarding those very improvements</u>. As such, they are clearly within the scope of discovery. Furthermore, like any discovery request, these items should be construed as not requiring the production of privileged items or those that

constitute attorney work-product; for all such items, the plaintiffs should submit a privilege log, as per Local Rule 37(a)(1).

36. All documents which the Plaintiff(s) intends to introduce at the trial of this matter.

Defendants' statement: The scope of discovery is broader, not narrower, than the scope of admissibility at trial. Any item admissible at trial is ipso facto within the scope of discovery. Furthermore, any claim of privilege or work product is illogical since, if the plaintiffs intend to introduce privileged or work-product items at trial, it follows that they must be planning to waive the relevant privilege. To the extent that the plaintiffs wish to retain the privilege until trial, they should be required to provide a privilege log as per Local Rule 37(a)(1).

40. Copies of any and all ledgers, journals, reports, financial statements, that in any way relate to the Connecticut project.

Defendants' statement: Once again, financial data concerning the Premises and the construction work performed thereon is at the very heart of this case.

## III. Conclusion

The plaintiffs have persisted in ignoring their discovery obligations for many months, and show little inclination to change. Furthermore, their objections to the defendants' Discovery Request are unfounded. For these reasons, the defendants respectfully request that their Motion to Compel be granted.

**KHALED F. GABR a/k/a KHALED AZIZ
And NILE LEASING MANAGEMENT
CORPORATION,
DEFENDANTS**

/s/ William J. O'Sullivan

William J. O'Sullivan, Esq. (ct08452)
BAKER O'SULLIVAN & BLISS PC
Putnam Park, Suite 100
100 Great Meadow Road
Wethersfield, CT 06109-2371
Phone (860) 258-1993
Fax (860) 258-1991
o'sullivan@boblawyers.com
Their attorneys

Also for Defendants,
Preston W. Halperin, Esquire (Ct23119)
Christine L. DeRosa, Esquire (Ct23569)
SHECHTMAN HALPERIN SAVAGE, LLP
86 Weybosset Street
Providence, RI 02903
(401) 272-1400

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT
HARTFORD

| | |
|---|---|
| MARTIN MEYERS AND LLV OF ) <br> HARTFORD, INC., ) <br>    Plaintiffs/Defendants-in Counterclaim,) <br> ) <br> V. ) <br> ) <br> GABR, KHALED, F. A/K/A, KHALED ) <br> AZIZ, AND NILE MANAGEMENT ) <br> LEASING CORPORATION ) <br>    Defendants/Plaintiffs-in-Counterclaim.) <br> ) | C.A. NO. 3:02CV527RNC <br><br><br><br><br><br><br><br><br> SEPTEMBER 6, 2002 |

**DEFENDANTS' FIRST REQUEST FOR PRODUCTION OF DOCUMENTS
PROPOUNDED UPON THE PLAINTIFFS**

Defendants, Khaled Gabr, a/k/a Khaled Aziz, and Nile Management Leasing Corporation (collectively "Defendants"), pursuant to the provisions of Rule 34 of the Federal Rules of Civil Procedure, propound the following Request for Production of Documents upon Plaintiffs, Martin Meyers and LLV of Hartford, Inc. (collectively "Plaintiffs"), and hereby request that said Plaintiffs produce at the offices of Shechtman Halperin Savage, LLP, 86 Weybosset Street, Providence, Rhode Island 02903 and permit counsel to inspect and copy, test, or sample, **within thirty (30) days** after service and pursuant to said rules, such of the following described documents or tangible things as are in the possession, custody or control of the defendant, its agents, servants, employees, attorneys, or representatives.

EXHIBIT A

1

## **DEFINITIONS**

"PERSON" shall mean and include natural persons, corporations, trusts, partnerships, ventures, governmental or public or quasi-public entities, citizens groups or associations, and any other form of organization or association.

"DOCUMENTS" shall mean the original and any non-identical copy of every kind of written, printed, typed, recorded, transcribed, taped, graphic or photographic matter or sound reduction, including but not limited to correspondence, letters, telegrams, other written communications, contracts, agreements (including any amendment thereto), diaries, memoranda, logs, notes, analyses, film, sound recording, telex, cable, summary, report, record of telephone conversation, personal conversation, discussion, interview, meeting, conference, investigation, negotiation, act or activity, projection, work paper or draft, computer output or input, data processing card, opinion or report of consultant, request, order, invoice or bill of lading, analysis, diagram, map, index, sketch, drawing, plan, chart, manual, brochure, pamphlet, advertisement, circular, newspaper or magazine clipping, press release, receipt, journal, ledger, schedule, bill or voucher, financial statement, statement of account, bank statement, check book, stubs or register, canceled check, deposit slip, charge slip, tax return (income or other), requisition, file, study, graph, tabulation, video recording, notebooks, reports, minutes, charts, forms, brochures, bulletins, workpapers, calendars, tape transcripts, photographs (prints or negatives), blueprints and any other similar matter, whether signed or unsigned, or transcribed, and any other data compilation from which information can be obtained, translated, if necessary, by the respondent through detection devices into reasonably usable form. Handwritten notations of any kind on any copy of a document render it non-identical.

The term "document" also means (a) drafts, (b) attachments to or enclosures with any document, and (c) every document referred to in any other documents.

"COMPLAINT" shall mean the complaint filed by Plaintiffs commencing this civil action.

"PLAINTIFFS" shall refer to and be used interchangeably for the Plaintiffs in this action, Martin Meyers and LLV of Hartford, Inc.

"DEFENDANTS" shall refer to and be used interchangeably for Defendants, Khaled Gabr, a/k/a Khaled Aziz, and Nile Management Leasing Corporation.

"YOU" or "YOUR" shall refer to Martin Meyers and LLV of Hartford, Inc., and the individual(s) responding to this Request on behalf of the Plaintiffs.

"CONNECTICUT PROJECT" AND/OR "PROJECT" shall refer to the property located at 527-535 Farmington Avenue in Hartford, Connecticut, and the rehabilitation thereof.

"COMMUNICATION" shall mean all exchanges of words, thoughts or ideas to another person(s) by any means and all memoranda of such communications.

The singular shall be deemed to include the plural and vice versa. The feminine shall be deemed to include the masculine and vice versa. The word "and" shall be deemed to include the disjunctive "or" and vice versa.

## INSTRUCTIONS

(1) If an objection is made to any request contained herein, for each item or category objected to:

    (a) state the specific ground for each objection;

    (b) identify each such document by giving its date, the name of each author (and each addressee, if different), the name of each addressee (and each

3

recipient, if different), and by giving any other information to identify such Document or part thereof; and

(c) provide a description of the subject matter of each document or item.

(2) You are under a duty to supplement these responses in accordance with the Rules of Civil Procedure.

(3) The singular shall be deemed to include the plural and vice versa. The feminine shall be deemed to include the masculine and vice versa. The word "and" shall be deemed to include the disjunctive "or" and vice versa.

(4) If there are no documents in existence that are requested in a particular paragraph of this request, your response must include a statement to that effect.

(5) Any entity named or described herein shall include all of that entities subdivisions, affiliates, employees, agents, representatives or attorneys.

## **REQUESTS**

1. A complete, legible, signed copy of the May 9, 2001 letter from Martin Meyers to ABC.

2. Copies of any and all cancelled checks that evidence where the $92,000 and/or $96,000 loan referenced in Bates numbered documents M-0206-M-0211 was deposited.

3. Copies of any and all cancelled checks that evidence disbursements made solely from this $92,000 and/or $96,000 loan.

4. Copies of any and all bank statement that evidence where the $92,000 and/or $96,000 loan referenced in documents M-0206-M-0211 was deposited, as well as with withdrawn.

4

5.  A statement that shows the current status of the $92,000 and/or $96,000 loan.

6.  A <u>complete</u>, legible, signed copy of the $92,000 and/or $96,000 mortgage.

7.  A <u>complete</u>, legible, signed copy of the $92,000 and/or $96,000 note and/or promissory note.

8.  A <u>complete</u>, legible, signed copy of the $92,000 and/or $96,000 guaranty.

9.  A <u>complete</u>, legible, signed copy of the $92,000 and/or $96,000 settlement statement.

10. A <u>complete</u>, legible, signed copy of the $92,000 and/or $96,000 security agreement.

11. Any and all documentation that indicates where the Bates numbered document M-0270 was deposited and what the status of the funds is currently.

12. A <u>complete</u>, legible, signed copy of the document that begins with Bates Number M-0290.

13. A detailed list of any and all loans that the Plaintiffs have obtained in order to finance the project in Connecticut that is the subject of the Plaintiff's Complaint, inclusive of mortgage holder, amount of loan, date loan was obtained, current status of loan.

14. <u>Complete</u>, legible, signed copies of any and all insurance policies against which the Plaintiff has obtained loans for this project.

15. <u>Complete</u>, legible, signed copies of any and all applications the Plaintiffs have provided in order to obtain the loan(s) against any insurance policy.

16. Copies of any and all statements showing the current status of any and all loans that the Plaintiff obtained using insurance policies.

17. Bates numbered document M-0289 is a letter regarding a loan from a Manulife Insurance Policy. Please provide a complete copy of the policy and a copy of the application for said loan, as well as a current statement that shows the status of this loan. Also, please provide any and all instruments securing and or guaranteeing this loan, including, but not limited to, each Mortgage, Promissory Note, Guaranty, Surety, etc.

18. Bates numbered document M-0290 and M-0328-M-0335 are First Union National Bank documents regarding account number 43865421113356027. Please provide all paperwork submitted to First Union National Bank to secure this loan, as well as a current statement that shows the status of this loan. Also, please provide any and all instruments securing and or guaranteeing this loan, including, but not limited to, each Mortgage, Promissory Note, Guaranty, Surety, etc.

19. Bates numbered document M-0291-M-0292 is a Promissory Note with HSBC Bank USA. Please provide copies of all documentation submitted to obtain this loan, as well as a statement showing the current status of this loan. Also, please provide any and all instruments securing and or guaranteeing this loan, including, but not limited to, each Mortgage, Promissory Note, Guaranty, Surety, etc.

20. Bates numbered document M-0327 references a "SunTrustPurchaseLine". Please provide all documentation regarding this account, number 011-7018400-00.

21. Bates numbered documents M-0339-M-0374 and M0403-M-0408 indicate Fleet "Commercial Loan Payments/Deposits", and lists account number 9418-864405. Please provide all documentation submitted to obtain this loan, as well as a statement showing the current status of this loan. Also, please provide any and all instruments securing and or guaranteeing this loan, including, but not limited to, each Mortgage, Promissory Note, Guaranty, Surety, etc.

22. Bates numbered documents M-0375-M-0386 are Fleet Small Business Statements that reference an account number 9001349539. Please provide all documentation associated with this account, as well as a current statement showing the status of this account.

23. Bates numbered documents M-0395-M-0402 are Fleet Commercial Loan Notices with an account number of 00-0108379-9. Please provide all documentation submitted to obtain this loan, as well as a current statement showing the status of this loan. Also, please provide any and all instruments securing and or guaranteeing this loan, including, but not limited to, each Mortgage, Promissory Note, Guaranty, Surety, etc.

24. A detailed accounting for all rents that the Plaintiff has collected and/or received for the project from the inception up to the present. Please included in this accounting, the name of the person/company making the payment, the date of the payment, the amount of the payment, and where each payment was deposited.

25. Copies of any and all Bank Statements evidencing all deposits made from any and all rental income from the date of the first deposit to the present.

26. Copies of any and all financial statements prepared by the Plaintiff, or on the Plaintiff's behalf, or at its direction, that in any way relate to this project.

27. Copies of any and all Federal and State Income Tax Returns for the Plaintiff, from 1995 up to and including the present.

28. Copies of any and all cancelled checks that evidence all payments made by the Plaintiffs to pay the $544,000 ABC loan.

29. Copies of any and all cancelled checks that evidence all payments made by the Plaintiffs to pay the $350,000 ABC loan.

30. Copies of any and all cancelled checks that evidence all payments made by the Plaintiffs to pay the $61,000 loan to Nile Management Leasing Corporation.

31. Copies of any and all cancelled checks that evidence all payments made by the Plaintiff to the Defendant in this matter.

32. Copies of any and all documents that constitute, relate, or refer to any communications between the Plaintiff and the Defendant concerning the project in Connecticut, and which is contained in the Plaintiff's Complaint.

33. Any and all documents that constitute, relate, or refer to any communications between the Plaintiff and any other person or corporation concerning the project in Connecticut, and which is contained in the Plaintiff's Complaint.

34. Any and all documents which constitute, relate, or refer to any agreement between the Plaintiff and the Defendant regarding the work to be done, materials to be used, or contractors to be used, in relation to the Connecticut project.

35. Any and all documents which constitute, relate, or refer to any agreement between the Plaintiff and any other individual, entity, or corporation regarding the work done or materials used on the project in Connecticut, and which is contained in the Plaintiff's Complaint.

36. All documents which the Plaintiff(s) intends to introduce at the trial of this matter.

37. Any and all documents that constitute, relate, or refer to the origination of LLV of Hartford, Inc., including but not limited to, Articles of Incorporation/Organization, Annual Reports, listing of Signatories, Board of Directors Reports, Minutes of Meetings, Applications, Certificates, etc.

38. Copies of any and all statements, reports, opinions, letters, evaluations, of any expert(s) that Plaintiff(s) intend to introduce at the trial of this matter.

39. Copies of all curriculum vitae's of any and all expert witnesses that the Plaintiff(s) expect to have testify at trial.

40. Copies of any and all ledgers, journals, reports, financial statements, that in any way relate to the Connecticut project.

41. Copies of any and all correspondence from the Plaintiff to the Defendant, in which the Plaintiff informed the Defendant of any issues relating the workmanship being performed on the Connecticut project.

42. Copies of any and all rental agreements, leases, or other documents that in any way reflect an agreement between the Plaintiff and any and all current tenants located at 527-535 Farmington Avenue in Hartford, Connecticut.

Khaled F. Gabr a/k/a Khaled Aziz
and Nile Leasing Management Corporation

By Their Attorneys:

_William J. O'Sullivan_ (signature)
William J. O'Sullivan, Esq.
BAKER O'SULLIVAN & BLISS PC
Putnam Park, Suite 100
100 Great Meadow Road
Wethersfield, CT 06109-2371
(860) 258-1993

Also for Defendants,
Preston W. Halperin, Esquire (Ct23119)
Christine L. DeRosa, Esquire (Ct23569)
SHECHTMAN HALPERIN SAVAGE, LLP
86 Weybosset Street
Providence, RI 02903
(401) 272-1400

## CERTIFICATE OF SERVICE

The undersigned hereby certifies on September 6, 2002, that the within REQUEST FOR PRODUCTION OF DOCUMENTS was HAND DELIVERED upon the following counsel of record:

Charles I. Miller, Esq.
O'Connell, Flaherty & Attmore, LLC
280 Trumbull Street
Hartford, CT 06103

_William J. O'Sullivan_ (signature)
William J. O'Sullivan, Esquire

10



*A Limited Liability Partnership*

*Christine L. DeRosa, Esquire*
*Email address: cderosa@shlawri.com*

January 27, 2003

**VIA FACSIMILE AND REGULAR MAIL**

Charles Miller, Esquire
O'Connell, Flaherty & Attmore, LLC
280 Trumbull Street
Hartford, CT 06103

RE: Meyers vs. Aziz and Nile Management

Dear Mr. Miller:

    Pursuant to our past conversations and your correspondence of October 2, 2002, please accept this as a formal demand for discovery responses. As you know, you will have thirty (30) days from the receipt of this demand in order to respond.

    For your convenience, I have attached a copy of the discovery that was propounded upon you back in September of 2002.

    If you have any questions, please do not hesitate to contact me at the Providence address below.

Very truly yours,

**COPY**

Christine L. DeRosa

CC: Karl Aziz

86 WEYBOSSET STREET · PROVIDENCE · RHODE ISLAND · 02903 · TEL. 401.272.1400 · FAX 401.272.1403
352 NEWBURY STREET · BOSTON · MASSACHUSETTS · 02115 · TEL. 617.267.7000 · FAX 617.267.7011
WWW.SHSLAWFIRM.COM

**EXHIBIT B**